Filed 9/14/21  P. v. Radabaugh CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074970 |
| v. | (Super.Ct.No. BAF1900716) |
| KEVIN LEON RADABAUGH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas D. Glasser, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

1

<u>INTRODUCTION</u>

A jury found defendant and appellant Kevin Leon Radabaugh guilty of inflicting corporal injury on a spouse (Pen. Code,[1] § 273.5, subd. (a), count 1) and false imprisonment (§ 236, count 2). It also found that defendant personally inflicted great bodily injury (GBI) (§§ 12022.7, subd. (e), 1192.7, subd. (c)(8)) in the commission of count 1. A trial court sentenced him to the upper term of four years on count 1, plus five years on the GBI enhancement, and the upper term of three years concurrent on count 2, stayed pursuant to section 654.[2]

On appeal, defendant argues that the trial court relied on improper factors in imposing the aggravated term on count 1. He also argues that pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the court's imposition of a court operations fee, a court facilities assessment fee, a booking fee, and a restitution fine violated his right to due process absent a hearing on his ability to pay. Defendant filed a supplemental brief further contending that the court's order to pay the booking fee (Gov. Code, § 29550) must be vacated pursuant to the recent passage of Assembly Bill No. 1869 (2020-2021 Reg. Sess.). (See also Gov. Code, § 6111.) The People filed a response contending that relief is automatic under Assembly Bill No. 1869; thus, no

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

[2] We note a sentence may not be both stayed pursuant to section 654 and also run concurrent. (*People v. Duff* (2010) 50 Cal.4th 787, 796.) We deem the court to have stayed the sentence because "the imposition of concurrent sentences is precluded by section 654 . . . ." (*Ibid.*)

action is needed. We agree with defendant that Assembly Bill No. 1869 applies and that the booking fee must be vacated. We also direct the superior court clerk to correct some clerical errors. In all other respects, we affirm the judgment.

FACTUAL BACKGROUND

Defendant and the victim were in a dating relationship for 10 years and lived in a recreational vehicle (RV) together with the victim's two sons, who were 17 and 22. Defendant and the victim got into an argument one day when he was yelling at her about different things, including them moving to Montana, and her son not wanting to go. The victim was in the bedroom when defendant entered the room, grabbed the side of her head, threw her down on the bed, and hit her in the ribs. Then he got on top of her and put his knee on her chest. She could not move since he was on top of her, and she was in so much pain, she yelled for him to stop. The victim also asked for a drink of water, but defendant said no and continued to yell at her. When she asked for a drink again, he grabbed a three- to five-gallon Sparkletts water bottle that was half full. He started hitting her with the bottle, while pouring water on her face. The victim felt like she was going to drown. When the water ran out, defendant said, "There's your drink," and got off of her. The victim was subsequently taken to the hospital and kept overnight. She sustained three fractured ribs.

3

## DISCUSSION

### I.  The Court Properly Imposed the Upper Term on Count 1

Defendant contends that the court relied on improper factors in imposing the upper term on count 1.  He claims the court used the same underlying facts—"great violence and a high degree of cruelty"—to impose the upper term and the GBI enhancement.  He also claims the court improperly used an element of the charged offense—that the victim was particularly vulnerable since she was alone with defendant in their home—as an aggravating factor to justify the upper term.  Finally, he argues the court erred in relying on his remote and nonviolent drug convictions as a ground for imposing the upper term.  We conclude the court properly imposed the upper term on count 1.

#### A.  *Procedural Background*

At the outset of the sentencing hearing, the court stated it intended to deny probation and sentence defendant to the upper term of four years in state prison on count 1 because the crime involved great violence and a high degree of cruelty, the victim was particularly vulnerable, and defendant had previously violated probation and parole.  The court stated it would also choose the upper term of five years on the GBI enhancement because defendant used a weapon (the water bottle) to strike the victim, and because defendant's prior convictions were numerous and of increasing seriousness.  As to count 2, the court stated it would select the upper term for the same

4

reasons given for count 1, and that count 2 would be run concurrent but stayed under section 654.

The court invited counsel to be heard. Defense counsel asked the court to consider a grant of probation for defendant, or in the alternative, impose either the middle term or low term. Counsel asserted that defendant's last conviction was in 2010, and his criminal record consisted mostly of drug offenses.

The court proceeded to sentence defendant to the upper term on count 1 because the crime involved great violence and a high degree of cruelty. It remarked that defendant "basically waterboarded the victim to the point where she feared she was going to drown." It further stated that the victim was particularly vulnerable in that the crime occurred when defendant was alone with her in the RV. The court also chose the upper term because defendant had previously violated both probation and parole, although it noted defense counsel's argument that his last felony conviction was nonviolent and occurred 10 years ago.

As to the GBI enhancement, the court imposed the upper term of five years, which was added to the four years on count 1. It chose the aggravated term because defendant used a weapon at the time of the offense. The court stated, "the water bottle was used to strike the victim, [and] has to be separated from the water being poured on the victim." It added that it also chose the upper term because defendant's prior convictions were numerous and increasing in seriousness and noted that they had in effect "gone from drugs to violence."

5

With respect to count 2, the court imposed the upper term of three years "for the same reasons described in Count 1."  The court ran the term concurrent, but stayed it pursuant to section 654, finding that the offenses in counts 1 and 2 reflected a single course of conduct with the objective of beating and threatening the victim into going with defendant to Montana.

B. *Forfeiture*

At the outset, we note the People's argument that defendant failed to raise his claims at the sentencing hearing and has therefore forfeited them on appeal. Defendant argues that the issues are preserved for appeal, since they affect his substantial rights.  He also contends that if we find that he forfeited his claims, then his trial counsel rendered ineffective assistance of counsel for failing to raise them. Assuming arguendo that defendant did not forfeit his claims, we conclude they fail on the merits.

C. *The Court Properly Imposed the Upper Term on Count 1*

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . .  The court shall select the term which, in the court's discretion, best serves the interests of justice."  (§ 1170, subd. (b).)  Sentencing courts have wide discretion in weighing aggravating and mitigating factors.  (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)  " 'We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational.' "  (*Ibid.*)  A single factor in

aggravation is sufficient to justify the imposition of the upper term. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433.)

The court here properly imposed the upper term of four years on count 1 based on three aggravating factors under California Rules of Court, rule 4.421: (1) the crime involved great violence and a high degree of cruelty (rule 4.421(a)(1)); (2) the victim was particularly vulnerable (rule 4.421(a)(3)); and (3) defendant's prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)).

1. *The Court Did Not Impose the Upper Term on Count 1 Based on the Same Facts as the GBI Enhancement*

Defendant first claims the court improperly sentenced him to the upper term on count 1 based on the same facts used to impose the GBI enhancement. He cites the first aggravating factor the court used—that the crime involved great violence and a high degree of cruelty—and argues that the great violence the court described as the basis for this factor "is also the basis for the great bodily injury finding." However, section 12022.7, subdivision (e), provides that, "[a]ny person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment." The jury found that defendant personally inflicted great bodily injury on the victim. He punched the victim in the ribs, and she sustained three fractured ribs. The GBI enhancement was presumably based on this conduct and injury. In contrast, the court imposed the upper term citing the aggravating factor that

7

the crime involved great violence and a high degree of cruelty, remarking that defendant "basically waterboarded the victim to the point where she feared she was going to drown." In other words, the GBI enhancement was based on defendant's conduct of inflicting injury on the victim, while the aggravating factor was based on his conduct of waterboarding the victim and striking her on the face with the water bottle. Therefore, contrary to defendant's claim, the court did not impose the upper term on count 1 based on the same facts used to impose the GBI enhancement.

2. *The Court Did Not Rely on an Element of the Charged Offense to Impose the Aggravated Sentence*

Defendant next claims the court impermissibly relied on an element of inflicting corporal injury on a spouse (§ 273.5) to impose the upper term. He points out that the court found the victim was particularly vulnerable in that the crime occurred when defendant was alone with her in the RV. Then, he states that an element of section 273.5 is that the victim is "the offender's co-habitant or former co-habitant." (§ 273.5, subd. (b)(2).) He reasons that "[p]eople who live together for a substantial period of time are bound to be alone together in their home." Thus, he concludes that since cohabitation is an element of the offense, it cannot also be used as an aggravating factor.

Defendant correctly notes that one of the aggravating factors the court cited was that the victim was particularly vulnerable. It found so because she was alone in the RV with defendant at the time of the attack. However, cohabiting with defendant is

8

not equivalent to being particularly vulnerable, especially since the victim's two boys lived with them, as well. Defendant attacked her when nobody else was home. Thus, she was particularly vulnerable at that time. Contrary to defendant's claim, the court did not rely on an element of the crime (cohabitation) to impose the upper term. Moreover, being alone with the perpetrator is not an element of section 273.5.[3]

3. *The Court Properly Relied Upon Defendant's Prior Performance on Probation and Parole*

Finally, defendant states that the court chose the upper term on count 1 "because the defendant has served both state prison and county jail terms previously, and also because the defendant has previously violated both probation and parole." He then claims the court improperly aggravated his sentence on the ground of his "remote criminal history." However, we see no abuse of discretion, since one of the aggravating factors a court can consider is that "[t]he defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." (Cal. Rules of Court, rule 4.421 (b)(5).)

In sum, we conclude the court properly cited aggravating factors and exercised its discretion in imposing the upper term on count 1.

---

[3] See CALCRIM No. 840. We note that a violation of section 273.5 may be committed by a former cohabitant or a person with whom the perpetrator has a child. There is no requirement that the perpetrator and victim be alone.

9

## II. No Remand is Necessary as to the Disputed Fine and Fees

Defendant challenges the court's imposition at sentencing of an $80 court operations assessment (Pen. Code, § 1465.8), a $60 criminal conviction assessment (Gov. Code, § 70373), a booking fee of $514.58 (Gov. Code, § 29550), and a $5,400 restitution fine (Pen. Code, § 1202.4). Relying on the appellate decision in *Dueñas*, *supra*, 30 Cal.App.5th 1157, he argues that the imposition of the fine and fees without a hearing establishing his ability to pay violated his due process rights since he is indigent.[4] (We will call this *Dueñas* error.) The People argue that defendant forfeited his claim by failing to object, that the restitution fine should be analyzed under the Excessive Fines Clause of the Eighth Amendment,[5] and that any error in imposing the fees was harmless, since defendant can earn prison wages and earn income after he is released from custody. We conclude that any failure to conduct an ability to pay hearing was harmless beyond a reasonable doubt.

### A. *Dueñas*

In *Dueñas*, the defendant was a probationer who suffered from cerebral palsy, was indigent, homeless, and the mother of young children. She requested and received a full hearing on her ability to pay the court facilities fee, court operations fee, and the

---

[4] We note that *Dueñas* did not concern booking fees. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)

[5] We note that in response, defendant asserts in his reply brief that ability to pay is relevant to an excessive fines challenge and contends that the court's failure to consider his ability to pay before imposing the challenged fines and fees was a violation of the Excessive Fines Clause.

10

mandatory minimum restitution fine. Despite her clear inability to pay these fees and fine, the trial court imposed them. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160-1163.) The appellate court held that the trial court violated the defendant's right to due process under both the United States and California Constitutions by imposing court operations and facilities assessments pursuant to Government Code section 70373 and Penal Code section 1465.8, without making a determination as to her ability to pay, even though such determination was not required by the statute. (*Dueñas*, at p. 1168.) Further, the court concluded that although the imposition of restitution fines pursuant to Penal Code section 1202.4, subdivision (b), is punishment, unlike the other fees, it raised similar constitutional concerns; therefore, the *Dueñas* court held that while the trial court must impose the minimum restitution fine even if the defendant demonstrates an inability to pay, "the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, at p. 1172.)

B. *Defendant Forfeited His Claim*

The *Dueñas* opinion was issued on January 8, 2019. Defendant's sentencing hearing was held over one year after the publication of *Dueñas*, on January 21, 2020. Defendant failed to object to the imposition of the fees and fine based on an inability to pay under *Dueñas*. Because of defendant's failure to object, he has forfeited his claim. (*People v. Forshay* (1995) 39 Cal.App.4th 686, 689.)

11

We further note that, even before *Dueñas*, section 1202.4 permitted the court to consider defendant's inability to pay in imposing a restitution fine above the minimum required amount of $300. The statute mandates that the court impose a restitution fine "unless it finds compelling and extraordinary reasons for not doing so," and "[a] defendant's inability to pay shall not be considered a compelling and extraordinary reason." (§ 1202.4, subd. (c).) However, the court may consider the defendant's inability to pay "in increasing the amount of the restitution fine in excess of the minimum fine." (*Ibid.*) Here, the probation officer recommended that the court impose a restitution fine above the minimum, using the formula under the statute,[6] and the court did so. (§ 1202.4, subd. (b)(2).) Defendant did not object or request an ability to pay hearing, even though the court could have considered the issue under the restitution statute. In other words, the law would have permitted it to consider his inability to pay the fine. Consequently, defendant forfeited the objection that the court failed to consider his ability to pay the restitution fine. (See *People v. Taylor* (2019) 43 Cal.App.5th 390, 399-400.)

C. *Any Error Was Harmless*

Assuming arguendo that defendant did not forfeit his claim, any error in failing to conduct an ability to pay hearing was harmless. "A ' "very limited class" ' of

---

[6] Section 1202.4, subdivision (b)(2), provides that "[i]n setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

federal constitutional errors are 'subject to per se reversal'; all others are 'amenable to harmless error analysis.' [Citations.] *Dueñas* did not address whether *Dueñas* error requires an automatic reversal." (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 (*Jones*).) "We therefore consider whether the error here was harmless beyond a reasonable doubt." (*Ibid*.; see *Chapman v. California* (1967) 386 U.S. 18, 24.)

Defendant claims he has no ability to pay the challenged fine and fees because he is indigent. In support of this claim, he points to the fact that the trial court determined he could not pay appointed counsel fees. However, just because he did not have the ability to pay appointed counsel fees does not mean he lacked the ability to pay the challenged fine and fees. (See *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 ["[A] defendant may lack the 'ability to pay' the costs of court-appointed counsel yet have the 'ability to pay' a restitution fine."].) Moreover, the record shows he was previously self-employed as a carpet and floor covering installer, earning $250 every two days when working.

Furthermore, not only does the record show defendant had some past income earning capacity, he has the ability to earn prison wages while incarcerated and following his release on parole. (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's ability to obtain prison wages and to earn money after his release from custody]; *Jones*, *supra*, 36 Cal.App.5th at p. 1035; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139.) The trial court imposed the challenged fine and fees in the total amount of approximately $6,000 and sentenced

13

defendant to nine years in state prison, reduced by 180 days of credit for time served. Every able-bodied person committed to the custody of the Department of Corrections and Rehabilitation is obligated to work. (Cal. Code Regs., tit. 15, § 3040, subd. (a).) As we explained in *Jones*, wages in California prisons currently range from $12 to $56 a month. (*Jones*, *supra*, 36 Cal.App.5th at p. 1035; Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) Defendant will have time to earn some if not all of the money owed during his nine-year sentence. (See *Jones*, at p. 1035.) He was 55 years old when he was sentenced, and nothing in the record suggests he is unable to work a prison job. In addition to his prison wages, there is no reason to believe he will not be able to earn money after his release from custody. Accordingly, on this record, we conclude that the *Dueñas* error was harmless beyond a reasonable doubt.

III. The Booking Fee Must Be Vacated Under Assembly Bill No. 1869

Defendant contends the $514.58 booking fee the court imposed under Government Code section 29550 must be vacated, pursuant to Assembly Bill No. 1869. The People argue that, pursuant to the plain language of Assembly Bill No. 1869, the booking fee becomes uncollectible as of July 1, 2021; therefore, relief is automatic and defendant's argument that we should vacate the fee is unavailing. We conclude Assembly Bill No. 1869 requires that we vacate the portion of the judgment against defendant that imposes the booking fee. (See *People v. Clark* (2021) 67 Cal.App.5th 248, 259 (*Clark*).)

14

Section 2 of Assembly Bill No. 1869 provides:  "It is the intent of the Legislature to eliminate the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and to eliminate all outstanding debt incurred as a result of the imposition of administrative fees." (Assem. Bill No. 1869, § 2.)  Among other provisions, Assembly Bill No. 1869 added Government Code section 6111 to further this intent.  That section provides:  "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."  (Gov. Code, § 6111, subd. (a).)  Section 6111, subdivision (b), provides that "[t]his section shall become operative on July 1, 2021."

*Clark, supra*, 67 Cal.App.5th 248, concerned probation supervision fees imposed under section 1203.1b.  The *Clark* court observed that Assembly Bill No, 1869 added section 1465.9, which states:  "On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1203, 1203.1e, 1203.016, 1203.018, 1203.1b, 1208.2, 1210.15, 3010.8, 4024.2, and 6266, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1454.9, subd. (a).)  The court concluded that the ameliorative changes to the law created by Assembly Bill No. 1869 applied to the defendant's sentence and vacated the

15

portion of the judgment imposing probation supervision fees under section 1203.1b. (*Clark*, at p. 259.)

The court in *Clark* explained: "Now that July 1, 2021, has passed, we think the plain language of this statute means two things for Clark. First, any 'balance' on his account for probation supervision fees—that is, any amounts imposed but not paid—is 'unenforceable and uncollectible.' [Citation.] This provision is largely self-executing, and provides both backward-looking and forward-looking relief. Clark may not be charged such fees, and to the extent he already has been charged them, any fees not yet paid are no longer collectible. Second, 'any portion of' the judgment against Clark that imposes probation supervision fees 'shall be vacated.' [Citation.] Assembly Bill 1869, to be sure, is not self-executing to the extent it authorizes a defendant debtor to request vacatur of the 'portion' of a judgment imposing an outstanding, uncollectible 'balance' of indebtedness. To truly wipe out that phantom debt, any appellant in Clark's position may make such a request, and if he or she does, we must grant it *even though* the pertinent fees are no longer collectible. The language of the statute is mandatory (i.e., 'shall be vacated')." (*Clark*, *supra*, 67 Cal.App.5th at p. 259.)

As relevant here, the language of Government Code section 6111 tracks the language of Penal Code section 1465.9. Pursuant to the plain language of Government Code section 6111, the unpaid balance of the booking fee is unenforceable and uncollectible, and the portion of the judgment against defendant imposing such fee must be vacated. (Gov. Code, 6111, subd. (a); *Clark, supra*, 67 Cal.App.5th at p. 259.)

16

To the extent defendant is claiming that the entire $514.58 booking fee must be vacated, the statutory language only authorizes him to request vacatur of "the unpaid balance" of the fee.  (Govt. Code, § 6111, subd. (a); *Clark, supra*, 67 Cal.App.5th at p. 259.)

IV.  <u>The Abstract of Judgment Should Be Corrected</u>

The People contend that the abstract of judgment should be corrected since the trial court imposed a $5,400 restitution fine under section 1202.4, but the abstract lists the restitution fine as $4,200.  We note that the sentencing minute order also indicates the court imposed the restitution fine in the amount of $4,200.  These appear to be clerical errors.  Generally, a clerical error is one inadvertently made.  (*People v. Schultz* (1965) 238 Cal.App.2d 804, 808.)  "[I]f the minutes or abstract of judgment fails to reflect the judgment pronounced by the court, the error is clerical and the record can be corrected at any time to make it reflect the true facts."  (*People v. Little* (1993) 19 Cal.App.4th 449, 452; see *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We therefore order the superior court clerk to correct the abstract of judgment to reflect the imposition of a $5,400 restitution fine.

DISPOSITION

The judgment is modified to strike any unpaid balance, as of July 1, 2021, of the booking fee imposed under Government Code section 29550.  The clerk of the superior court is directed amend the abstract of judgment to reflect this modification. The clerk is also directed to correct the abstract of judgment to reflect the court's

17

imposition of a $5,400 restitution fine.  The clerk is further directed to generate a new minute order reflecting that the January 21, 2020 minute order and abstract of judgment incorrectly reflect that the court imposed a $4,200 restitution fine, and that the clerk has now corrected those errors.  The clerk is directed to forward copies of the new minute order and amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:

MILLER

Acting P. J.

SLOUGH

J.

18